OPINION OF THE COURT
Hilda G. Schwartz, J.
Petitioner, Federation of New York State Rifle and Pistol Clubs, Inc. (Federation) and several individuals bring this proceeding pursuant to CPLR article 78 for an order mandating respondents Police Commissioner and Commanding Officer of the License Division, Police Department of the City of New York (Police Commissioner) to accept applications for pistol licenses immediately upon tender. Petitioner individuals also seek certification of class status.
Petitioner refers to "target” pistol licenses but is clearly referring to what are described in section 400.00 (subd 2, par [e]) of the Penal Law as licenses to "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof’.
Prior to December 19, 1978 any applicant for a pistol license could file an application with the Police Department at any time during normal office hours. On that date, as a result of administrative problems resulting from a cut in the number of officers available for processing new pistol license applications, a system of acceptance at a controlled rate was installed. Appointments are now made for presentation of applications. By March, 1979, appointments were made a year in advance to ensure adequate processing. The decision to make appointments for delivery of applications by applicants was made so that information on the application would be up to date and not outdated in a holding period.
Respondents have made a determination that since processing of each application is essential, acceptance of applications should be scheduled at such time as the Police Department could adequately investigate and process them.
It is petitioners’ claim that pistol license applications should be accepted upon tender, that is at issue. The Police Commissioner of the City of New York, pursuant to section 436-5.0 of the Administrative Code of the City of New York and section 400.00 of the Penal Law, is authorized to grant and issue licenses and permits for the keeping or carrying of pistols or revolvers at his discretion.
*106 The courts will not countermand the discretionary act of an administrative body unless the determination arrived at by the body is without any reasonable basis in fact. (Matter of Levi v Regents of Univ. of State of N. Y., 281 NY 627, affg 256 App Div 444; Matter of Krapp v Kern, 255 App Div 305; Matter of Mandell v Purcell, 54 AD2d 935; Zaharko v Goodman, 51 AD2d 754; Matter of Reddick v Board of Regents of Univ. of State of N. Y., 58 Misc 2d 970.)
Section 400.00 (subd 2, par [e]) of the Penal Law, relating to a permit to carry a concealed weapon upon the person, without regard to employment or plan of possession, requires a showing of proper cause for its issuance, as well as additional discretionary factors. (Cf. Shapiro v Cawley, 46 AD2d 633.) The skill and responsibility required in the processing of application for pistol permits is of a high order and its exercise vitally essential to public order and safety.
The investigation required by subdivision 4 of section 400.00 of the Penal Law is detailed and exacting. It includes investigation of all statements, records of the Department of Mental Hygiene, taking of fingerprints and physical descriptions in quadruplicate, searches as to records and many additional steps.
In addition to such requirements, there has been an upsurge in the number of applications for "carry” pistol licenses. On December 18, 1978 "carry” license applications accounted for 40% of the pending applications. In addition, priority justifiably had to be given to those applications where the applicant’s livelihood depended on his obtaining the license, such as special guards. In renewals of existing licenses alone, 36,000 are outstanding and are required by law to be renewed every two years. An increase in the 1978-1979 period of applications for "carry” pistol licenses added to the caseload.
The respondent states that, by dint of added personnel, the time lag in processing this type of pistol application has been considerably shortened and the licensing division is now able to accept over 130 applications per week as compared with 60 per week last December. The Police Commissioner states that, without any further loss of manpower, he anticipates that he will be able to eliminate the backlog and accept applications as they are submitted.
The submission and acceptance of an application for a pistol license is an integral part of an over-all procedure which is totally within the discretion of the Police Commissioner.
*107 "It is well settled that the determination of an administrative agency will be accepted by the courts if it has warrant in the record and a reasonable basis in law.” (Matter of Willcox v Stern, 18 NY2d 195, 203.) "Its [the court’s] duty is not to second-guess the wisdom of what an administrative agency has done, nor to reform the procedures and methods used by that agency.” (Matter of Procaccino v Stewart, 32 AD2d 486, 489.)
Where a problem exists and an administrative head has chosen a particular solution, the court will not direct a different solution, so long as the original decision was within the authority of the agency and not arbitrary, capricious or unreasonable. (James v Board of Educ., 42 NY2d 357; Fahey v Toia, 91 Misc 2d 1099; R. Lyons Hickey, Inc. v Commissioner of Dept. of Rent & Housing Maintenance of City of N. Y., 58 AD2d 773; Matter of Abrams v New York City Tr. Auth., 39 NY2d 990.)
The Court of Appeals held, in Matter of New York City School Bds. Assn. v Board of Educ. (39 NY2d 111, 120, 121): "Budget cuts imposed upon the board by the city had to be met by sharply curtailed expenditures * * * As long as the act was within the power of the city board, which it was, the courts may not interfere.”
"There is no allegation here of any violation of a mandatory public duty to perform a specific official act as to which there is no discretion.” (Matter of Perazzo v Lindsay, 30 AD2d 179, 180, affd 23 NY2d 764.)
The named petitioners seek certification of class action status pursuant to CPLR article 9. The petition states that the class they represent are those persons who have attempted to submit their carry pistol applications and were informed an appointment would be made at a later date for such submission. Said petitioners do not establish the prerequisites of a class action. (CPLR 901.) Where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of stare decisis, class action is not appropriate. (Matter of Rivera v Trimarco, 36 NY2d 747, 749; Matter of Jones v Berman, 37 NY2d 42; Baumes v Levine, 38 NY2d 296.)
There exists a grave doubt that petitioner Federation of New York State Rifle and Pistol Clubs, Inc., is a proper party in this proceeding. The petition states that it is "an organization of member pistol clubs and individuals interested in the *108 constitutional right to keep and bear arms, representing a membership of over one thousand licensed pistol holders in the City of New York”.
Since Federation’s members already possess pistol licenses according to its own statement, it is not their members whose applications for initial licenses have been allegedly delayed in acceptance, but other individuals who are not their members and who are in no way associated with it.
Respondents’ determinations and procedures in processing applications for pistol permits are a reasonable exercise of discretion. Respondents have not failed to perform a duty enjoined upon them by law and are not proceeding in excess of jurisdiction. Their determinations are not in violation of lawful procedure; not in error of law; not arbitrary, capricious or an abuse of discretion.
The petition is dismissed.